William Rossbach
Rossbach Law, P.C.
401 North Washington St.
Missoula, MT 59807
406-543-5156
bill@rossbachlaw.com

Dustin Leftridge
McGarvey, Heberling, Sullivan & Lacey, P.C
345 1st Avenue East
Kalispell, MT 59901
406-752-5566
dleftridge@mcgarveylaw.com



**FILED**

OCT 0 2 2015

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| PEBBLE LIMITED PARTNERSHIP,<br><br>Plaintiffs,<br><br>vs.<br><br>ENVIRONMENTAL PROTECTION AGENCY, et al.;<br><br>Defendants. | CASE NO. MC-15-2-BU-BmmJCL<br><br>**NON-PARTIES CENTER FOR SCIENCE IN PUBLIC PARTICPATION AND DR. DAVID CHAMBERS' MEMORANDUM IN SUPPORT OF JOINT MOTION TO QUASH PLAINTIFF'S SUBPOENAS** |

## I.    INTRODUCTION

In 2010, six federally recognized Alaska tribes petitioned the EPA under

Section 404(c) of the Clean Water Act, 33 U.S.C. § 1344(c) to protect the waters of

Bristol Bay, Alaska, home to the largest wild salmon fishery in North America,

1

from potential environmental damage from mining development in the watershed. In 2011 EPA responded by undertaking a comprehensive, twice peer-reviewed, scientific watershed assessment of the potential impacts of large-scale mining on the region and its resources and opening up the process to public comment. EPA received over a million comments. Pebble Limited Partnership (PLP), an Alaska partnership with interests in mining the lands adjacent to the bay's waters, also submitted technical analyses and comments opposing the use of Section 404(c) to protect the bay. In 2014, EPA initiated formal proceedings under Section 404(c) to protect Bristol Bay's waters.

In September 2014, PLP filed this lawsuit against the EPA alleging the EPA violated the Federal Advisory Committee Act (FACA) 5 U.S.C. app. II §§1-16 by establishing and utilizing three advisory committees to assist the EPA in "an unprecedented plan" to preempt PLP "from ever exercising its right to extract minerals from (the Pebble) deposit." Exhibit A, Second Amended Complaint 2. PLP claims that the alleged advisory committees, made up of Dr. Chambers, CSP2, and other organizations and individuals, unlawfully collaborated with EPA to use Section 404(c) in a "scheme" to prohibit mining of the Pebble Deposit. *Id.* at 3. PLP on its own gave fictional names to these three alleged advisory committees as (1) the Anti-Mine Coalition, (2) the Anti-Mine Scientists, and (3) the Anti-Mine Assessment Team. *Id.* 7, 17, 25  PLP claims that CSP2 and Dr. Chambers are

2

"members" of the Anti-Mine Coalition FAC and the Anti-Mine Scientists FAC. *Id.*
¶ 31

Congress enacted FACA to ensure that advisory committees are "established"
and "utilized" only when necessary and subject to uniform standards and
procedures. Only when an agency directly establishes a committee, however, does
FACA impose a number of procedural requirements, including that each advisory
committee file a charter, provide advance notice of its meetings, make them open
to the public, and keep detailed meeting minutes and records. 5 U.S.C. app II §§1-
16. In addition, FACA requires that committee records be made available to the
public, so long as they do not fall within one of the Freedom of Information Act's
exemptions. *Id.*

In this litigation, PLP claimed that EPA established and utilized the advisory
committees without abiding by the requirements of FACA because EPA did not (1)
prepare and file charters, (2) chair all the meetings, (3) publish notice of meetings,
and (4) ensure that membership in the committees was fairly balanced. Ex.A ¶169.
Thus, the only issue in PLP's FACA lawsuit is what the EPA did and how it did it -
whether EPA ran afoul of FACA's procedural requirements.

According to the sole published decision on non-party discovery in FACA
litigation, information relevant to whether EPA "utilized" an alleged committee *may
only* be discovered from the defendant-agency (*i.e.*, EPA) and its officials, and *no*

3

one else. *Wyoming v. U.S. Dep't of Agriculture*, 208 F.R.D. 449, 454 (D.D.C.

2002); *cf. Wyoming v. U.S. Dep't of Agriculture, et al*, 239 F.Supp.2d 1219

(D.Wyo. 2002) (which allowed limited discovery but only from *intervening*

*parties.*) Under FACA, the term "utilized" does not mean  mere use, but instead

means "strict management by agency officials." Relevant information is, therefore,

only in the "strict control" of EPA and its officials.

In the underlying FACA case, PLP has the burden of proving that EPA

"established" one committee or "utilized" any of the three alleged FACA

committees. The first element requires proof that EPA directly formed an advisory

committee, *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24

(D.D.C. 2010) (citing *Food Chem. News v. Young*, 900 F.2d 328 (D.C.Cir.), *cert.*

*denied*, 498 U.S. 846 (1990)), and the second element focuses on whether EPA

"has 'actual management or control of the advisory committee.'" *Wyoming v. U.S.*

*Dep't of Agriculture*, 208 F.R.D. 449, 454 (D.D.C. 2002) (quoting *Byrd v. EPA*,

174 F.3d 239, 246 (D.C.Cir.1999)).

Courts have defined "'utilized' so narrowly that FACA only applies to those

groups that are under strict management or control of the government agency.

*Wyoming*, 208 F.R.D. at 454 (citing *Public Citizen v. U.S. Dep't of Justice*, 491

U.S. 440, 462 (1989)). The Ninth Circuit agrees. *Aluminum Co. of Am. v. Nat'l*

*Marine Fisheries Serv.*, 92 F.3d 902, 905 (9th Cir. 1996) (quoting *Food Chem.*

4

*News v. Young*, 900 F.2d 328, 332–33 (D.C.Cir.), *cert. denied*, 498 U.S. 846 (1990)); *See also Washington Toxics Coal. v. U.S. E.P.A.*, 357 F. Supp. 2d 1266, 1272 (W.D. Wash. 2004)

Because the information sought by these lengthy subpoenas is irrelevant to the underlying litigation regarding the creation of an alleged committee, any subpoena in a FACA case subjects a non-party to an undue burden. Indeed, earlier in the case, when PLP moved to expedite discovery in support of its motion for preliminary injunction, it represented to the Alaska court that all relevant information lies within the "exclusive possession" of the EPA. Exhibit B, PLP Reply Brief at 2. After PLP obtained the preliminary injunction, it reversed itself and served subpoenas on at least 35 non-party entities that provided information to the EPA. The direct impact is a massive, improper burden on non-parties to reveal internal strategic communications adverse to PLP's position and to intimidate and chill the exercise of their First Amendment rights.

## II.   STATEMENT OF FACTS

CSP2 is a non-profit organization that provides technical advice to grassroots groups on natural resource issues, especially as it relates to mining. Dr. Chambers is the founder and executive director of CSP2. Among its goals, CSP2 seeks to focus the debate on factual issues brought to light by technical analyses. Exhibit D, Dr. Chambers' Declaration.

PLP served CSP2 and Dr. Chambers with a subpoena on August 25, 2015 and served Dr. Chambers with a subpoena on August 25, 2015. Both subpoenas are more than 9 pages long seeking a large number of documents on varied topics and communication with many other entities over more than a decade, not just communication with the EPA. *See* Exhibit C, List of Subpoenaed Material; subpoenas attached to Motion to Quash as Ex. A, B.

In addition, the subpoena for Dr. Chambers compels his appearance at a deposition. CSP2 and Dr. Chambers served their objections to the subpoenas on October 1, 2015. On September 25, 2015, counsel for Dr. Chambers and CSP2 and counsel for PLP held a Local Rule 37 meet-and-confer with regard to the subpoenas served on Dr. Chambers and CSP2, as well as Dr. Chambers' and CSP2's intention to move to quash the subpoenas. However, the parties were unable to resolve their differences.

## III.   ARGUMENT

### A.   Information Sought by PLP is Neither Relevant nor Likely to Lead to Evidence Relevant to PLP's FACA Claims and Imposes an Undue Burden on Non-Party CSP2 and Dr. Chambers

The subpoenas to Dr. Chambers and CSP2 are subject to the relevance requirement of Federal Rule of Civil Procedure 26(b). *See Jiminez v. City of Chicago*, 733 F. Supp.2d 1268, 1273 (W.D. Wash. 2010). Rule 26 permits discovery when evidence will be admissible at trial or it is "reasonably calculated

to lead to the discovery of admissible evidence." But Rule 26 imposes limitations on discovery when the court determines it is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." It also imposes a proportionality requirement to limit discovery when the "burden or expense of the proposed discovery outweighs its likely benefit..." Fed. R. Civ. P. 26(b)(2).

Rule 45 also protects the rights of non-parties by requiring the party issuing the subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). *Wapato Heritage, LLC v. Evans*, 2008 WL 4460271, at *4-5 (E.D. Wash. Oct. 1, 2008). The court for the district where compliance is required should enforce that duty to avoid imposing an undue burden or expense, "and impose an appropriate sanction ... on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). The court should quash a subpoena that subjects a non-party to undue burden. Fed. R. Civ. P. 45(d)(3)(A). A subpoena seeking irrelevant information is "inherently an undue burden." *See Century Sur. Co.*, 2010 WL 2231890, at *1; *Jiminez,* 733 F.Supp.2d at 1273. The moving party has the burden of persuasion on a motion to quash, *id.*, but the party issuing the subpoena must demonstrate that the discovery sought is relevant and could not be obtained from a source that is more convenient, less burdensome or less expensive. *Arista Records LLC v. Lime Grp., LLC*, 2011 WL

7

679490, at *1 (W.D.Wash. Feb. 9, 2011).

The subpoenas seek irrelevant information that can and should be obtained "*exclusively*" from the EPA. "FACA does not apply to every entity whose views may be sought or considered by an agency . . . rather it applies only to advisory committees or their equivalent 'established or utilized by one or more agencies.'" *Town of Marshfield*, 552 F.3d 1, 5-6 (1st Cir. 2008). CSP2's and Dr. Chambers' internal communications and documents, along with communications with outside entities other than the EPA over the course of the last 10 years, are not relevant to PLP's claims that EPA improperly established or utilized advisory committees. To the extent that their communications with EPA have any bearing on PLP's FACA claims, those documents can and should be sought from the EPA.

In *Wyoming,* 208 F.R.D. 449 (D.D.C. 2002) the State of Wyoming sued the United States Department of Agriculture ("USDA") alleging that the USDA violated FACA by establishing an advisory committee to support its development and adoption of new Roadless Regulations applicable to the National Forest System located within the State. *Id.* at 451-52. Wyoming then sought a broad range of documents from a number of non-party witnesses that it alleged provided research data, legal memoranda, advice, and recommendations to the USDA about the development of the Roadless Regulations. *Id.* at 452. The non-parties resisted discovery and the State of Wyoming moved to compel production. The court

concluded that FACA is intended to cover situations in which the federal

government itself establishes or utilizes an advisory committee. To the extent that

there may be evidence of formation or control of an official committee, "all

relevant documents would be in the hands of the federal defendants, and thus

intrusion into the activities of the non-party witnesses is unwarranted and

unnecessarily burdensome." *Id.* at 454. The court held that the documents

requested from the non-party witnesses fell outside the scope of the discovery

needed for Wyoming to prove its claim that the government violated the FACA.

*Id.*

The scope of the quashed subpoenas in *Wyoming* parallels the excessive

breadth of PLP's subpoenas here. *See Wyoming,* 208 F.R.D. at 452. The agency-

defendant here is EPA which has custody and control over the information that is

relevant to this case. As noted above, when it suited its purposes PLP represented

to the Alaska court that "facts going to the 'established or utilized' requirements

under FACA … are in Defendants' exclusive possession." Ex. B, 2.  In the Ninth

Circuit the doctrine of judicial estoppel bars PLP from now making a contrary

argument to this court in defense of its subpoena. *Hamilton v. State Farm Fire &*

*Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Rissetto v. Plumbers &*

*Steamfitters Local* 343, 94 F.3d 597, 600–01 (9th Cir.1996).

In assessing PLP's third-party subpoenas, the Court must consider the burden the document subpoenas impose on CSP2 and Dr. Chambers. Fed. R. Civ. P. 45(d)(1); *Wyoming*, 208 F.R.D. at 452. The extent to which the terms of a document subpoena create an undue burden depends on the "relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed." *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D. D.C. 2005).

PLP has no need for information from CSP2 or Dr. Chambers at all. PLP claims that EPA violated FACA "in developing and implementing an unprecedented plan to assert EPA's purported authority under Section 404(c) of the federal Clean Water Act." But FACA applies only to the government's association with advisory committees that are "actually formed by the agency" or "under the actual management or control of the agency." *Wyoming*, 208 F.R.D. at 451- 52. Because of the narrow scope of the FACA statute, discovery is correctly limited to the information possessed by the agency defendant, a "more convenient, less burdensome, less expensive" source. *Wyoming*, 20 F.R.D at 454. As non-parties, CSP2 and Dr. Chambers should not be required to produce information, which, if it exists, is available from EPA.

10

Instead, PLP seeks discovery of no conceivable relevance to PLP's FACA claims from CSP2 and Dr. Chambers. The actions of EPA are the central, indeed the only, facts at issue in this lawsuit. But, PLP's subpoenas are not limited to EPA's actions, or even to CSP2's or Dr. Chambers' contacts with EPA. The subpoenas demand production of documents and communications that EPA has likely never seen from policy groups, foundations, and individuals possibly unknown to the EPA.

The subpoenas seek information developed or acquired over the course of more than a decade - well before any of the events relevant to the FACA lawsuit could have occurred. The subpoenas also make unreasonable production demands by, for example, requiring that all paper and electronic documents be produced exactly as CSP2 and Dr. Chambers hold them in their files, down to: "all pages stapled or fastened together as they were maintained." *See* Ex. A, B attached to Motion to Quash.

The subpoenas place a particular undue burden on nonprofit CSP2's limited resources. CSP2's does not employ a records custodian. It does not organize its records in accordance with the subpoenas' categories. By demanding all documents related to vague topics, the subpoena would require that CSP2 search through all of its electronic and hard copy files for a period of more than a decade for documents that might be responsive, amounting to possibly 100 gigabytes of data, plus

11

copying thousands of pages of reports, hand written materials, correspondence, and notes. Ex. D., Chambers' Decl. All of CSP2's hardcopy documents and most of its electronic records would need to be reviewed individually for responsiveness and privilege because CSP2 does not maintain its electronic records in a readily searchable format for the subpoenas' categories. *Id.* The universe of records that CSP2 would have to search includes documents related to:

- communications with a long list of other non-parties, technical working papers, strategy papers, notes, etc;
- communications with EPA;
- presentations at professional association meetings;
- newsletters, annual reports, stories, and editorials.

CSP2 has four employees. Each employee is currently engaged in projects that fully occupy his or her schedule. CSP2 relies on grant funding and service income from contracts, and its financial support comes with specific restrictions. Any work done on the records request from PLP cannot be funded by present grants or contracts, and the loss of time and regular work production would have to be absorbed by CSP2. *Id.* at 10-11.

Like in *Wyoming*, the information PLP seeks from CSP2 and Dr. Chambers is outside the scope of the discovery needed for PLP to prove its claim that EPA violated the FACA and their unrestricted scope creates a costly and burdensome

12

task for CSP2 to produce information of no evidentiary value and that will not advance the progress of the FACA lawsuit.

## D.    PLP Seeks Internal Campaign Communications Protected from Disclosure by CSP2's First Amendment Associational Rights.

First Amendment Associational Rights further limit discovery from non-parties in FACA litigation. *See Wyoming*, 208 F.R.D. at 454-55. The *Wyoming* court concluded that plaintiff's subpoenas violated the non-parties' First Amendment rights and the same reasoning applies here. The First Amendment was implicated because its protection "extends not only to the organization itself, but also to its staff, members, contributors, and others who affiliate with it." *Id.* at 454. As here, compliance with requests for "internal communications and communications among various groups . . . would have a potential 'for chilling the free exercise of political speech and association guarded by the First Amendment.'" *Wyoming*, 208 F.R.D. at 454-55. *See* Ex. D, Chambers' Decl. ¶¶ 8-9. The court found that Wyoming would need to establish a compelling need for such discovery and concluded that Wyoming was unable to do so because the information sought by subpoena was irrelevant to the FACA claim and because Wyoming could obtain the information it needed to proceed on the claim from the federal defendants. *Id.* The same reasoning applies here. PLP has failed to show a

compelling reason that would justify its otherwise blatant violation of Dr.
Chamber's and CSP2's First Amendment rights.

The "freedom to associate with others for the common advancement of
political beliefs and ideas is . . . protected by the First and Fourteenth
Amendments." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir. 2010).
The First Amendment creates a qualified privilege against disclosure of certain
associational information. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449,
462 (1958); *Beinin v. Ctr. for Study of Popular Culture*, 2007 WL 1795693, at *3
(N.D. Cal. June 20, 2007). This privilege is not absolute, but is evaluated using a
two-part test. *See Perry*, 59 1 F.3d at 1159-61.

The party asserting the privilege must make a prima facie showing that
compelled disclosure of the information would chill associational rights. *Id.* at
1160. If the party resisting discovery makes this prima facie showing, the burden
then shifts to the party seeking discovery to demonstrate a compelling interest in
obtaining the information sufficient to warrant the infringement on associational
rights. *Id.* at 1161. At a minimum, this requires a "show[ing] that the information
sought is highly relevant to the claims or defenses in the litigation - a more
demanding standard of relevance than that under Federal Rule of Civil Procedure
26(b)(1)" - and that the request is "carefully tailored to avoid unnecessary
interference with protected activities." *Id.*; see also *Reinen*, 2007 WL 1795693, at

14

*3 (the information must be "crucial to the party's case, or ... goes to the heart of the claims.")

PLP seeks all communications by CSP2 to and from an expansive list of other non-party entities related to the Pebble Mining Project. This request necessarily encompasses non-public communications between Dr. Chambers, CSP2 and participants in the campaign to prevent permitting of the Pebble Mine. The Ninth Circuit had "little difficulty concluding that disclosure of internal campaign communications" can, and in that case would, deter the exercise of protected activities, including participation in campaigns and the free exchange of ideas within campaigns. See *Perry*, 59 F.3d at 1162-63.

David Chambers, executive director of CSP2, submits his Declaration with this memorandum demonstrating how the compelled disclosure of non-public communications relating to CSP2's work regarding Bristol Bay will alter how such communications are made in the future. He notes that the organization will be less willing to engage in free and open communications internally and with its grant recipients and partners, knowing that these communications may be disclosed to the very entities whose actions are being evaluated. Ex. D

Through his declaration, Dr. Chambers has established a prima facie showing of infringement by describing the subpoenas' intrusion into his protected activities. The subpoenas' indiscriminate demands for, *inter alia*, Dr. Chambers'

15

private internal communications and communications with many other non-parties

on matters of public concern, and the commitment of time and resources that

compliance would require, will deter the exercise of protected activities and the

free exchange of ideas by Dr. Chambers, CSP2, and others. Accordingly, the

burden shifts to PLP to demonstrate a compelling need for this information

sufficient to overcome the privilege. PLP is unable to demonstrate that the internal

communications to other non-party organizations it seeks are "highly relevant" or

"crucial" to its case as required under the more demanding relevancy standard for

information protected from disclosure by the First Amendment privilege. *Id.*; *see*

*also Beinin v. Center for the Study of Popular Culture*, 2007 WL 1795693, at *3

(N.D. Cal. June 20, 2007). Indeed, PLP's requests for this information do not even

satisfy the Rule 26(b)(1) relevancy standard. PLP's displeasure with EPA action

does not entitle it to trench on Dr. Chambers' and CSP2's constitutional rights. The

Court should rule that Dr. Chambers and CSP2 need not produce these

communications. *Id.*

**E.    PLP's Subpoenas Are Cumulative and Overbroad**

PLP's identical requests for broad categories of irrelevant information from

the multitude of subpoenas served on at least 35 non-parties are cumulative

attempts to obtain the same documents it has obtained or should obtain from EPA

and is a dragnet for the internal strategic communications from PLP's opponents.

As shown by the Exhibit C hereto and the actual subpoenas attached to our motion, PLP's requests are broad and expansive, well beyond any reasonable limits, even if all the evidence relevant to the underlying issues were not, as PLP earlier represented "exclusively" in the control of the EPA.  In addition, the court in Alaska has already permitted the deposition of a former EPA official after finding that the ex-official was likely to be the person most likely to provide critical documents and testimony in this case.  Extending discovery to non-parties who never worked at EPA is a bridge too far and cumulative of requests already made of EPA and its officials (past and present), in this case and elsewhere.

The expansive nature of the requests belies PLP's contention that its requests are for information about EPA's "strict management and control" of these fictional committees, as PLP does not ask for any material related to them. Rather, PLP seeks communications and meetings with "any person" about a wide range of broadly defined topics. Indeed, even if the requests were limited to documents related to "Communications" with EPA officials and "meetings" about the subpoena's topics, they are so broad that PLP would force CSP2 and Dr. Chambers to review eleven years' worth of documents and testify about the exercise of his First Amendment rights.

## IV.   CONCLUSION

Because PLP's subpoenas seek information that is in the custody of the EPA and that is not relevant to their FACA claims against EPA, impose an undue burden and expense on CSP2 and Dr. Chambers, and seek internal communications protected from disclosure by the First Amendment, CSP2 and Dr. Chambers respectfully request that the Court quash the subpoenas and order that they need not comply with PLP's requests set forth in the subpoenas, including the deposition Dr. Chambers.

Sanctions are also warranted here. Parties invoking the subpoena power "have a grave responsibility to ensure it is not abused." *Theofel v. Farey-Jones,* 359 F.3d 1066, 1074 (9th Cir. 2003). PLP has sought enforcement of subpoenas that, for all of the foregoing reasons, should never have been issued. "Sanctions are appropriate" when "clear authority shows [subpoenas]should not have been issued in the first place." *Schweickert v. Hunts Point Ventures, Inc.,* 2014 WL 6886630, at *13 (W.D. Wash. Dec. 4, 2014); *In re Shubov,* 253 B.R. 540, 547 (B.A.P. 9th Cir. 2000) (awarding sanctions because "literally" any response to the subpoena was an "undue burden or expense"). Ignoring the requirements of Rule 45(d)(l), PLP has imposed an undue burden and expense on these non-parties. For that, sanctions

should be imposed. For the foregoing reasons, Movants CSP2 and Dr. Chambers respectfully request that this Court grant their motion.

DATED this _2ND_ day of October, 2015.

ROSSBACH LAW, P.C.

By: _____
William Rossbach

Dustin Leftridge
McGarvey, Heberling, Sullivan & Lacey, P.C
345 1st Avenue East
Kalispell, MT 59901

*Attorneys for Non-Party Dr. David Chambers and Center for Science in Public Participation*

## CERTIFICATE OF COMPLIANCE

The undersigned, William A. Rossbach, certifies as follows:

The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman Font typeface consisting of fourteen characters per inch. The total word count is 3955 which is less than 6500 words pursuant to L.R. 7.1(d), excluding caption and certificates of compliance and service. The undersigned relies on the word count of the word processing system used to prepare this document.

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2015, I served on counsel for Plaintiff Pebble Limited Partnership a true and correct copy of the Center for Science in Public Participation's **OBJECTIONS TO PLAINTIFF'S SUBPOENA** by electronic and mail to:

Errol R. Patterson
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, D.C., 20036
epatterson@steptoe.com

and via USPS mail to:

Thomas Amodio
REEVES AMODIO LLC
tom@reevesamodio.com

Additionally, courtesy copies have been sent via electronic mail to counsel for Defendants:

Brad Rosenberg
Robin Thurston
Stuart Robinson
U.S. DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BRANCH
brad.rosenberg@usdoj.gov
robin.f.thurston@usdoj.gov
stuart.j.robinson@usdoj.gov